IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANKIE L. McCOY, SR.,     *

    Plaintiff,     *

v.     *     Civil Action No. GLR-16-3667

WEXFORD HEALTH SOURCES, INC.,     *
et al.,
         *

    Defendants.
***** 

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Wexford Health Sources, Inc. ("Wexford"), Barbara Steele, Yonas Sisay, M.D., Thomas Lehman, M.D., and Mary Rockefeller, P.A.'s (collectively with Cheryl Foots,[1] the "Medical Defendants") Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 21) and Foots' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 35). Also pending before the Court is Plaintiff Frankie L. McCoy, Sr.'s Motion for Appointment of Counsel for Record (ECF No. 38).[2] The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant Defendants' Motions and deny McCoy's Motion.

---

[1] The Court will direct the Clerk to amend Foots' name on the docket to reflect her full name and the correct spelling.

[2] Also pending before the Court is McCoy's Motion for Scheduling Order and Pre-Trial Discovery (ECF No. 40). Because the Court will grant Defendants' Motions, the Court will deny as moot McCoy's Motion.

# I. BACKGROUND[3]

McCoy is a physically impaired "chronic care inmate" currently confined at the Maryland Correctional Institution-Jessup ("MCI-J") in Jessup, Maryland. (Compl. at 1, 7, ECF No. 1).[4] McCoy was prescribed a daily pain medication, Ultram, for his severe neck and spinal stenosis and herniated disc conditions, which cause leg pain that radiates down his side and to his feet. (Id. at 7; Temesgen Aff. ¶ 4, ECF No. 21-7). McCoy is also prescribed Baclofen, to assist with managing his pain. (Temesgen Aff. ¶ 4).

On June 7, 2016, Kasahun Temesgen, M.D. saw McCoy for a scheduled chronic care visit. (Id. ¶ 5). At that visit, Dr. Temesgen renewed McCoy's prescriptions for Ultram and Baclofen through October 7, 2016. (Id.). On July 18, 2016, Dr. Temesgen again saw McCoy for a scheduled chronic care visit during which McCoy stated that he was receiving his medications as prescribed. (Id. ¶ 6). Notwithstanding his active prescription, McCoy was denied his Ultram from August 28, 2016 through September 6, 2016. (Compl. at 5–6). McCoy advised Steel, the Wexford Administrator at MCI-J, Foots, the Appointment Clerk, and Dr. Sisay that he was not receiving Ultram. (McCoy Decl. ¶ 10, ECF 28-1). They "each told [him] that the MCIJ Wexford Pharmacy did not have my Ultram in stock and that they were not going to order it from another Wexford-operated facility or from another pharmacy outside of the prison." (Id.).

---

[3] Unless otherwise noted, the facts outlined here are uncontroverted and the Court views them in the light most favorable to McCoy.

[4] Citations to the Complaint refer to the pagination assigned by the Court's electronic docketing system.

On September 5, 2016, McCoy submitted a sick-call slip informing medical personnel that he was not receiving his Ultram. (Temesgen Aff. ¶ 8; Pl.'s Medical Records ["Med. Recs."] at 7, ECF No. 23). The next day, a nurse practitioner saw McCoy. (Temesgen Aff. ¶ 9). The nurse practitioner contacted CorrectRx, Department of Public Safety and Correctional Services' private pharmacy contractor, to find out why McCoy was not receiving his Ultram despite having a prescription for it. (Id.). It was discovered that CorrectRx refused to fill McCoy's June 7, 2016 prescription for Ultram because it did not have a physical signature. (Id. ¶ 10; Med. Recs. at 11). CorrectRx did not, however, inform any of McCoy's prescribing medical providers that McCoy was being denied his Ultram due to a missing signature. (Temesgen Aff. ¶ 10). On September 7, 2016, after the paperwork issue was resolved, McCoy began receiving his Ultram as prescribed again. (Id. ¶ 9).

McCoy also suffers from neuropathy in his legs and feet, which cause sensations to be diminished due to pain, numbness, and tingling. (Id. at 6). For his condition, McCoy requires "new custom high top orthopedic shoes" and that he "continue with hydrotherapy." (Id.). A pair of McCoy's orthopedic shoes are worn out and have holes in the bottoms which caused him to suffer two falls, one in January of 2016 and one in February of 2016. (Id. at 7). As a result of the falls, McCoy injured his face, jaw, left shoulder, and elbow, and exacerbated his chronic conditions. (Id.). In late June or

early July 2016, McCoy received his orthopedic shoes.[5] (Defs.' Reply Ex. A at 35, ECF No. 30-1).

On November 7, 2016, McCoy sued Defendants. (ECF No. 1). In his Complaint, McCoy alleges violations of 42 U.S.C. § 1983 (2018), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (2018), and the Rehabilitation Act ("RA"), 29 U.S.C. § 701 et seq. (2018). (Id. at 6). McCoy seeks compensatory and punitive damages. (Id. at 5).

On March 13, 2017, the Medical Defendants filed their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 21). McCoy filed an Opposition on April 3, 2017. (ECF No. 28). On April 19, 2017, the Medical Defendants filed a Reply.[6] (ECF No. 30).

---

[5] In both of his Oppositions, McCoy alleges that he is waiting for unspecified follow-up treatment from both on- and off-site clinical expert specialists (Pl.'s Opp'n at 13, ECF No. 28; Pl.'s Opp'n Def. Foots' Mot. Dismiss at 2, ECF No. 37). In his Opposition to Foots' Motion, McCoy alleges that Foots confiscated his walker. (Pl.'s Opp'n Def. Foots' Mot. Dismiss at 1–2). McCoy is, however, "bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint." Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) aff'd, 141 F.3d 1162 (4th Cir. 1998) Accordingly, the Court will not consider these allegations.

[6] After Medical Defendants replied to McCoy's Opposition, McCoy filed "Plaintiff's Supplement and Amended Complaint Material Document Facts and Proof Opposition Response to Defendants Motion to Dismiss Alternative Motion for Summary Judgment." (ECF No. 34). To the extent that McCoy intends for the filing to be a surreply, the Local Rules do not permit surreplies. See Local Rule 105(2) (D.Md. 2016). Therefore, the Court will not consider it in ruling on Defendants' Motions.

To the extent that the filing was intended to amend the Complaint to add retaliation claims against Steel and Foots, Defendants oppose the amendment. Federal Rule of Civil Procedure 15 provides, in relevant part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave."

4

On May 3, 2017, the Court issued an Order directing the Clerk to add Cheryl Foots as a Defendant. (May 3, 2017 Order, ECF No. 31). On June 5, 2017, Foots filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 35). McCoy filed an Opposition on June 21, 2017. (ECF No. 37). On June 23, 2017, Foots filed a Reply. (ECF No. 39).

## II. DISCUSSION

### A. <u>Motion for Appointment of Counsel</u>

"A pro se prisoner does not have a general right to counsel in a § 1983 action." <u>Evans v. Kuplinski</u>, 713 F.App'x 167, 170 (4th Cir. 2017) (citing <u>Whisenant v. Yuam</u>, 739 F.2d 160, 163 (4th Cir. 1984), <u>abrogated on other grounds by</u> <u>Mallard v. U.S. Dist. Ct.</u>, 490 U.S. 296, 298 (1989)). A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary, and an indigent claimant must present "exceptional circumstances." <u>See</u> <u>id.</u>; <u>Miller v. Simmons</u>, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but

---

Fed.R.Civ.P. 15(2). McCoy does not have Defendants' consent, and therefore must seek leave of the Court. Although the Court must freely give leave to amend, the Court may deny a party leave to amend where the proposed amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile. <u>See</u> <u>Equal Rights Ctr. v. Niles Bolton Assoc.</u>, 602 F.3d 597, 603 (4th Cir. 2010). A proposed amendment is prejudicial to the opposing party if it is belated and would change the nature of the litigation. <u>Id.</u> at 604. The allegations McCoy asserts in his amendment are wholly unrelated to the claims raised in this case. Thus, the Court concludes that granting McCoy leave to amend would prejudice Defendants. Accordingly, the Court denies McCoy's attempt to amend his Complaint.

5

lacks the capacity to present it." See Whisenant, 739 F.2d at 163 (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).

As McCoy has previously been advised, after careful consideration of his motions and previous filings, the Court concludes that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. In addition, the issues pending before the Court are not unduly complicated. The Court, therefore, concludes that no exceptional circumstances exist that would warrant the appointment of an attorney to represent McCoy under § 1915(e)(1). Accordingly, the Court will deny McCoy's Motion.

**B.** **Motions to Dismiss or, in the Alternative, Motions for Summary Judgment**

    **1.** **Standard of Review**

        **a.** **Motion to Dismiss**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

McCoy filed his Complaint pro se. Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the

plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted).

### b. Conversion to a Motion for Summary Judgment

In this case, Defendants filed Motions to Dismiss, or in the Alternative, Motions for Summary Judgment. (ECF Nos. 21, 35). A motion styled as a motion to dismiss or, in the alternative, for summary judgment implicates the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d).

The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)). The Court's complete discretion is guided by the United States Court of Appeals for the Fourth Circuit's two-part test for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion. Under this test, the "parties

[must] be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment" and "the parties [must] first 'be afforded a reasonable opportunity for discovery.'" Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985)).

When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005).

Here, Defendants caption their Motions in the alternative and rely on exhibits attached to their Motions. Likewise, McCoy relies on exhibits attached to his Oppositions. Because the Court will consider Defendants' and McCoy's exhibits, the Court must convert the Motion to a motion for summary judgment.

### c. Motion for Summary Judgment

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers,

or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in

10

the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

> 2. **Analysis**
>
>> a. **Section 1983 Claims**

Defendants advance separate arguments for why the Court should grant summary judgment in Wexford's and the Medical Defendants' favor on McCoy's § 1983 claims.[7] The Court addresses these Defendants in turn.

>>> i. **Wexford**

Defendants contend that McCoy fails to state a § 1983 claim as to Wexford because McCoy has not alleged a policy, custom, or practice that deprived him of his constitutional rights. The Court agrees.

Liability is imposed under § 1983 on "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights . . . ." Private businesses that employ individuals who act under the color of state law are considered "persons" under § 1983. Austin v. Paramount Parks, Inc., 195 F.3d 715, 727–29 (4th Cir. 1999).

---

[7] Because Foots incorporates by reference the Medical Defendants' Motion into her Motion, the Court considers their arguments together.

But there is no respondeat superior liability under § 1983. Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004). Rather, a private corporation may be held liable under § 1983 "only when an official policy or custom of the corporation causes the alleged deprivation of federal rights." Austin, 195 F.3d at 728.

Here, McCoy has not pled or demonstrated conduct on the part of Wexford that would make it liable for the acts alleged in the Complaint. Thus, the Court concludes that Wexford is entitled to summary judgment in its favor on McCoy's § 1983 claims.

### ii. The Medical Defendants

Defendants assert there are no facts to indicate a violation of McCoy's civil rights under § 1983, and, therefore, the Medical Defendants are entitled to summary judgment as a matter of law. The Court agrees.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976); see also Estelle, 429 U.S. at 102. In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. See Estelle, 429 U.S. at 106; see also Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or

12

ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).

Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires a determination as to whether the defendant acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991); see Farmer, 511 U.S. at 839–40. As the United States Court of Appeals for the Fourth Circuit has explained, "[t]he requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" King, 825 F.3d at 219 (citation omitted). Although this "entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. (quoting Farmer, 511 U.S. at 835).

In order "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Lightsey, 775 F.3d at 178. In other words, deliberate indifference requires a showing that the defendant disregarded a substantial risk of harm to the prisoner. Young v. City of Mt. Ranier, 238 F.3d 567, 575–76 (4th Cir. 2001). A plaintiff can satisfy this requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such

13

knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (quoting Farmer, 511 U.S. at 842).

Here, as to the denial of McCoy's prescribed medication, the evidence establishes that the interruption in McCoy's receipt of his medication does not rise to deliberate indifference. McCoy states that between August 28, 2015 and September 6, 2016, he put Dr. Sisay, Steel, and Foots "on written and personal notice" that he needed his Ultram. (Pl.'s Opp'n at 5).[8] McCoy does not, however, explain what process he used to place the named Defendants on notice, nor does he provide copies of the notice provided.

The documentary evidence shows that on September 1, 2016, an unspecified doctor was "aware" that a signature was needed before McCoy could receive his Ultram as prescribed. (Pl.'s Opp'n Ex. 1 at 16, ECF 28-1) ("MD is aware [that medication is unavailable] waiting on MD signature Dr. NIF approved form before receiving meds."). On September 5, 2016, McCoy submitted a sick-call slip complaining of the lack of Ultram. After medical staff were alerted that McCoy was not receiving his Ultram, the issue was resolved and McCoy resumed receiving his medication on September 7, 2016.

---

[8] Dr. Temesgen avers that "the only proper channel" for alerting medical staff to medication issues is through the sick-call process. (Temesgen Aff. ¶ 12). McCoy has provided two sick-call slips regarding the denial of Ultram. One is dated August 29, 2016 and does not show any markings that it was received by medical staff. (Exhibits filed separately and unnumbered, ECF No. 28). There is no evidence, however, that any of the Defendants received the slip. Even if not acting on a sick-call slip rises to deliberate indifference, there is no evidence in the record that implicates any of the Defendants. The second slip is dated September 5, 2016, and shows that it was received and McCoy was seen by medical staff. (Id.).

14

The evidence in the record does not demonstrate that any of the named Defendants were aware that McCoy's medication had been interrupted. The evidence does, however, establish that once medical staff became aware that McCoy was not receiving his prescribed medication, they took immediate action. McCoy received his prescribed medication a mere two days after alerting medical staff of the problem, in writing and via the proper channel. Even if McCoy alerted medical staff on August 28, 2016, that "he needed his Ultram," (Pl.'s Opp'n at 5), there is simply no evidence that Defendants acted in a manner that was deliberately indifferent to his needs. At best, McCoy may have established a medical negligence claim, which is insufficient to prove a deprivation of his Eighth Amendment rights. See Farmer, 511 U.S. at 835; Boyce v. Alizaduh, 595 F.2d 948, 953 (4th Cir. 1979) abrogated on other grounds by Neitzke v. Williams, 490 U.S. 319 (1989) (quoting Estelle, 429 U.S. at 104) ("'[I]nadvertent failure to provide adequate medical care,' while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable under [42 U.S.C. § 1983].").

As to McCoy's claims that a hole in the sole of his shoe caused him to fall, his assertion is without support or explanation. Assuming that the hole caused McCoy to fall, McCoy has not explained how any of the Medical Defendants are responsible for the delay in his receiving new orthopedic shoes. The record evidence is clear that McCoy's medical providers filed consultation requests for orthopedic shoes and there is insufficient evidence that the Medical Defendants were responsible for any delay in providing them.

Further, while McCoy provides evidence that he filed sick-call slips generally alleging that he fell, the sick-call slips were multi-faceted complaints about the lack of follow-up care for his neuropathy. He filed a sick-call slip in January of 2016, alleging that he fell three times due to his "painful-swollen feet/ankle/numbness/neuropathic changes. In attempts to ambulate-daily with (holes) in my (orthopedic hi top shoes)." (Pl.'s Opp'n at Exhibits filed separately and unnumbered). McCoy also filed two sick-call slips in both March and August of 2016 complaining of the lack of follow-up care for his neuropathy and generally alleging falls. (Id.). The evidence demonstrates, however, that McCoy did not advise any of his medical providers upon examination that he had fallen due to his shoes. In addition, there is no evidence that McCoy received medical care for any fall he suffered in January or February 2016. Consequently, there is no evidence to support McCoy's bald assertion that the delay in providing him new orthopedic shoes caused him any injury.

As to McCoy's claim that he was denied hydrotherapy, the record evidence demonstrates that his medical providers disagreed as to the efficacy of the treatment and it was not approved. While one provider recommended hydrotherapy to treat McCoy's neuropathy, (Pl.'s Opp'n at 4, ECF No. 28), another provider disagreed and found that it would only provide short term palliative relief, (Defs.' Reply Ex. A at 1–2). Disputed questions of medical judgment are not cognizable constitutional claims because they do not involve deliberate indifference. See Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) ("[Q]uestions of medical judgment are not subject to judicial review."). A

disagreement amongst McCoy's medical providers, therefore, does not constitute a violation of McCoy's Eighth Amendment rights.[9] Moreover, McCoy fails to allege an injury from the lack of the hydrotherapy.

Thus, the Court concludes that McCoy fails to offer sufficient evidence to withstand summary judgment on his deliberate indifference claims. Accordingly, the Court will grant Defendants' Motions as to McCoy's deliberate indifference claims.

### b. Americans with Disabilities Act and Rehabilitation Act Claims

To establish a prima facie case under Title II of the ADA or under the RA,[10] McCoy must show that: (1) he has a disability; (2) he was either excluded from participation in, or denied the benefits of, some public entity's services, programs, or activities for which he was otherwise qualified; and (3) the exclusion, denial of benefits, or discrimination was because of his disability. See Constantine v. George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005); Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999). The ADA and the RA define "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such

---

[9] Attached to McCoy's Opposition are medical records from 2017 indicating that the issue regarding whether McCoy would benefit from hydrotherapy continued to be considered. (Pl.'s Opp'n at Exhibits filed separately and unnumbered—see February 10, 2017 provider chronic care visit notes and January 10, 2017 onsite consult notes).

[10] "The ADA and RA generally are construed to impose the same requirements due to the similarity of the language of the two acts." Baird, 192 F.3d at 468 (citing Rogers v. Dep't of Health, Envtl. Control, 174 F.3d 431, 433–34 (4th Cir. 1999)) (noting that it is appropriate to refer to constructions of the Rehabilitation Act in determining the meaning of an ADA provision). "Congress has directed courts 'to construe the ADA to grant at least as much protection as provided by the regulations implementing the Rehabilitation Act.'" Id. (quoting Bragdon v. Abbott, 524 U.S. 624 (1998)).

impairment; or being regarded as having such an impairment . . ." 42 U.S.C. § 12102(1) (2018); 29 U.S.C. § 705(9)(B) (2018).

Defendants submit that based on the undisputed facts, McCoy has failed to establish that he has a disability and that he was denied access to a service, program, or activity based on that disability. The Court agrees.

Here, McCoy has not provided any evidence to show that he is disabled as defined under the ADA or RA, nor does he plead as much. To be sure, McCoy has provided evidence of physical impairments, but he has not provided any evidence that they limit any of his major life activities. Assuming that the denial of prescription medication and hydrotherapy, as well as the delay in receiving new orthopedic shoes, were denials of benefits for which McCoy was qualified, McCoy does not provide any evidence that he was denied these benefits because of a disability. At best, McCoy has demonstrated that he was denied medical care, which is not sufficient to establish claims under the ADA or the RA. See, e.g., Miller v. Hinton, 288 F.App'x 901, 903 (4th Cir. 2008) (prison's alleged denial of inmate's access to colostomy bags and catheters, who was a paraplegic confined to a wheelchair who used such supplies for urinary bladder control, did not constitute disability discrimination in violation of ADA absent a showing that inmate was treated in that manner because of his disability); Spencer v. Easter, 109 F.App'x 571, 573 (4th Cir. 2004) (failure to provide timely refills of prescription drugs did not amount to an ADA violation where there was no showing that it was done based on prisoner's

disability). Thus, the Court concludes that McCoy has failed to establish ADA or RA claims.

In sum, Defendants are entitled to judgment as a matter of law on McCoy's § 1983, ADA, and RA claims. Accordingly, the Court will grant Defendants' Motions.

## III. CONCLUSION

For the foregoing reasons, the Court will grant the Medical Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 21). The Court will also grant Foots' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 35). The Court will deny McCoy's Motion to Appoint Counsel (ECF No. 38) and deny as moot McCoy's Motion for Scheduling Order and Pretrial Discovery (ECF No. 40). A separate Order follows.

Entered this 25th day of April, 2018. /s/
George L. Russell, III
United States District Judge